CHARLES T. REEVES, Plaintiff-Appellee, *v.* WANDA G. REEVES, Defendant-Appellant.

(No. 70-63; 

Third District—March 2, 1971.

Marshall E. Douglas, of East Moline, for appellant.

Robert Noe, of Moline, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Appellee Charles T. Reeves and appellant Wanda G. Reeves were divorced on April 11, 1968, by a decree of the United States District Court, Panama Canal Zone, Cristobal Division. In the decree, custody of the three children of the parties was given to the wife with a two-month a year visitation period allowed to the husband. After the divorce, the wife, Wanda G. Reeves, moved to East Moline, Illinois. When the husband, Charles T. Reeves, came to Illinois in June of 1969, his wife refused to let him take the children and he instituted a *habeas corpus* proceeding in Illinois. At the hearing on the *habeas corpus* proceeding, the wife contended that there had been a change of circumstances since the entry of the Canal Zone divorce decree and she requested that the husband's visitation rights be terminated. The Illinois Circuit Court in Rock Island found no changes of circumstance of the parties sufficient to warrant a modification of the Canal Zone decree and directed the wife to deliver the three minor children to the father in accordance with his visitation rights under the decree.

The wife, Wanda G. Reeves, later filed a petition in the United States District Court in the Canal Zone where the divorce decree was originally entered and sought to have the husband's visitation rights modified in such proceeding. The Canal Zone court, as a result of such hearing, ordered, on July 25, 1969. that the husband actually have two more weeks of visitation a year. On January 19, 1970, the wife filed a petition in Illinois to establish the foreign Panama Canal Zone decree as an Illinois decree under the Uniform Enforcement of Foreign Judgments Act. (1969 Illinois Revised Statutes, ch. 77 pars. 88–105.) The petition of appellant to establish such foreign decree alleged that said Wanda G. Reeves was a resident of Rock Island and that the children were residents of Rock Island and remained there for nine months or more out of each year. The petition also expressly alleged "that there is need to establish said decree in Illinois to enforce or to modify the provisions relating to custody and support of the children of the parties hereto". The petition also stated that the exercise of jurisdiction by the Rock Island court over the decree would involve "reviewing and modifying the same from time to time as in equity it may seem just".

The plaintiff, Charles T. Reeves, filed a verified motion to dismiss the wife's petition alleging specifically that there was no need to modify the terms of the Canal Zone decree for the reason that plaintiff was complying in all respects with such decree and that there had been no change in circumstances alleged which would warrant modification of the decree. The motion also specified the respective court proceedings in Illinois and in the Canal Zone which were held since the entry of the decree, and alleged that it would be difficult for the husband, who is a United States Govern-

ment employee working in the Canal Zone, to travel to Rock Island County for hearings pertaining to the decree with which he has fully complied in every respect and would work a great hardship upon him and be unjust and inequitable. The trial court entered an order allowing the motion to dismiss the petition to establish the foreign decree.

So far as we have been able to discover, there is no prior case reported in the courts of review of this State, in which the particular problem involved in the instant case has been determined. We are conscious of the fact that the policy of the courts of this State with respect to enforcement of foreign divorce decrees and child custody provisions involved therein, could be seriously affected by the determination of this cause. We, therefore, have examined into the background of the question in an effort to determine what should be the basic policy in such cases in this State.

Under the law of most states, full faith and credit is given to a divorce decree of a sister state. This is true in Illinois. It is true that in some states the theory of comity is used rather than full faith and credit, and at times there is emphasis in some of the states on the issue that modification depends on what is in the best interest of the child rather than requiring a rigid showing of change of circumstances. Whatever theory or concept the courts pursue, fundamentally, there seems to be a strong application of the full faith and credit principle to discourage multiple litigation. Such litigation is undesirable, not only from the standpoint of the courts in both the State and Federal system, but also because of the potential harm to the child involved. As stated by Ratner in Child Custody in Federal System, 62 Michigan Law Review 795, present rights are not ordinarily denied recognition because they may be altered by future judicial action; that the constitutional policies of *res judicata* and interstate respect are significant in the adjustment of the parent-child relationship as well as in the dissolution of the marital relationship; and, that to discourage abduction, to limit the waste in individual and social resources involved in relitigation; to provide greater psychological stability for the child; to protect the reasonable expectations of the prevailing parent, and to promote federal cohesion, each state should accept and enforce the valid custody determinations of every other state without readjudicating previously decided issues.

Such considerations are based on a desire not to promote a "lose and run" situation where a party who loses a custody or visitation battle moves from state to state until the party finds an area where that party can win. The author, Stumberg, in writing in the Chicago Law Review on The Status of Children in the Conflict of Laws, 8 Chicago Law Review 42, emphasizes that there should be a rule requiring convincing proof that conditions have become such as to make it undesirable for the child to remain in the environment fixed by the earlier decree. It is, thus, apparent

that finality of litigation and a national unity on the question of divorce decrees involving the custody of children is desirable as a matter of principle. The Illinois rule requiring a change of circumstances related to the best interests of the child to be shown before modification, seems to be a sound approach to the problem.

Relating these considerations to the procedure in the present case, it is important to look to the background involved in the decree which the defendant is seeking to have registered in this State. The custody and visitation question was decided originally in the United States District Court in the Canal Zone at the time of the granting of the divorce. This issue was again relitigated in Illinois in the *habeas corpus* proceeding. Thereafter, the defendant attempted to relitigate it again in the United States District Court in the Canal Zone. Now, on the basis of her petition, she seeks to register the Canal Zone decree in Illinois as a foreign decree for the purpose of enabling her to come into the Illinois court and seek again to modify the original divorce decree. The question, therefore, is whether a person living in Illinois has a right to register a foreign divorce decree providing for custody of children for the express purpose of instituting proceedings to modify such decree as if it were an Illinois decree, even without allegation of change of conditions.

The Uniform Enforcement of Foreign Judgments Act provides in Section 3 ( ch. 77 par. 90, 1969 Illinois Revised Statutes) that the filing of the petition constitutes a registration of the foreign judgment. It is provided, however, in par. 8 of such Act that defenses may be presented and issues can be raised as in all other civil cases. A motion to dismiss the petition is, therefore, appropriate. Par. 10 of the Act authorizes the court to set aside the registration. It is, therefore, apparent that the Act authorizes the trial court to set aside the registration of a foreign judgment. In the cause before us, the registration petition was dismissed on motion.

Since the petition for registration specifically asserted that it was filed for the purpose of having the Illinois court modify the custody and visitation portions of the Canal Zone decree, the Illinois principle of giving full faith and credit to a foreign decree should be applied. While the right to deny the use of the "Foreign Judgments Act" may even be questionable when asserted for the broad purposes outlined in the petition in this case, the petition is clearly deficient in failing to allege facts justifying modification of the decree. No change of circumstances is asserted in the petition nor were there any allegations of violations of the foreign decree. The trial court apparently determined that, since there was no money allegedly due under the Canal Zone decree and no allegation of a violation of such decree, and since the only stated purpose of the registering of the foreign decree was to modify it in Illinois, this was an improper attempt

to utilize the Foreign Judgments Act. We believe that this conclusion was sound.

The Illinois Act was adopted in 1951. We have had occasion to consider the Act in its relationship to the public policy of this State in *Employers' Liability Assurance Corp. v. Coronet Insurance Company,* 106 Ill.App.2d 24, 245 N.E.2d 629. As pointed out in that case, we consider policy questions only if Illinois policy is or will be involved in the procedure sought to be undertaken under the Foreign Judgments Act. In the *Employers' Liability* case *(supra),* the judgment was obtained in a foreign jurisdiction but the Illinois procedure policy was held not applicable to procedure in the foreign jurisdiction. In the cause before us, however, the policy of this State to give full faith and credit to foreign decrees is directly involved since the Illinois court would be requested to act affirmatively in modifying the Canal Zone decree.

It is reasonably clear that the legislature of this State had in mind making it easier to enforce judgments across state lines (Proceedings in Committee of the Whole, Uniform Act on Enforcement of Foreign Judgments, National Conference of Commissioners on Uniform State Laws, September 15–20, 1947; and Proceedings in Committee of the Whole, Revised Uniform Enforcement of Foreign Judgments Act, National Conference of Commissioners on Uniform State Laws, 1963). It was clear that the Act was drafted primarily to enable creditors to pursue debtors across state lines to enforce judgments. In *Light v. Light,* 12 Ill.2d 502, the court referred to the Act's purpose of making it easier to enforce judgments across state lines. In the *Light* case, the ex-husband failed to comply with the decree that he pay alimony. Where a party needs to enforce provisions relating to child custody or visitation as against the other who has left the original forum in which the decree was rendered and is ignoring the directive of the court, the Act certainly could be employed for such enforcement purposes. In the cause before us, however, there was no showing of a need to enforce the decree. Plaintiff Charles Reeves has fully complied with the decree in all respects and, as indicated in the documents filed in this court, has voluntarily increased the amount of support he is paying for his children from $100 bi-weekly to a $112.50 bi-weekly sum to cover the increased cost of living.

The Circuit Court of Rock Island County had a right to set aside the registration. This could be accomplished by allowing the motion to dismiss the petition, where there is clearly a defense to the petition apparent from the pleadings. This is true in the case before us. We believe that the Circuit Court in this cause made a proper disposition. To hold otherwise would permit the Foreign Judgments Act to be used arbitrarily for a purpose for which the Act was not designed or intended or for a purpose

for which the Act was not designed or intended or for a purpose contrary to the policy of this State.

Accordingly, we believe that the trial court acted properly in allowing the motion to dismiss and that this cause should be affirmed.

Order affirmed.

STOUDER and SCOTT, JJ., concur.